Next up is 10-112, Eagle v. Michaelson I want to first start out by trying to pray favor with you and point out the respect with which I hold you. This is my appellate suit. When I went to the Supreme Court a week ago, I argued in front of our Supreme Court, trying to uphold your honor on a court decision. In fact, yours did, with a hole in my pocket of my jeans. The facts of this case are important because I'm overwhelmed by them and I guess I'm the only one that was overwhelmed by them. to the SILC, the orthopedic place, gets a surgeon on her arm. They clear her for surgery. On the day they cleared her, 1-11, she had-I'm sorry-11-11, her blood sugar level was 493. I think testimony in trial was anything over 100 is bad, excuse me, 140. 493 on the day they cleared her, she comes back for surgery on the 18th, it's 398 that day. Totally, completely out of control. They do the surgery anyhow. She has complications which they knew would more likely than not happen because the blood sugar was out of control. And those were the facts that we heard at the trial of the case and we-because the property and competence council got a non-guilty. The issues at the trial level, where I think the trial staff were from there are numerous. The ones I think are more serious and contributed to the cause of the problem. And I don't know how more I can emphasize that. These facts were overwhelming. You can't get 398 on the day of surgery, everybody being aware, trying to give the facts where they were trying to give her medication and drop it while they were there. They proceeded before they got it, whether they dropped it or not. So it proves how hard malpractice cases are. Was there testimony, counsel, that the standard of care is breached if blood sugar level is a certain amount? Yeah. And what was that amount? What was the testimony? There was several amounts of testimony about that. The testimony by-and that's part of my argument, part of the error. Part of it is admissions. In this case, the doctor himself and his corporation were defendants. Dr. Majid, an owner of the defendant corporation, testified. I said, doc, what is the standard of care? Is there a limit? You don't go beyond when you do blood sugar. If it's too high, where do you cut it off? He says 250. There was testimony then from Dr. Bahr, who is, SIOC owns the, with the hospital owns the facility, and they hire the anesthesiology group. After the event occurred, after this event occurred, they established a policy, no surgery above 250. I don't, the judge didn't let that in. That's part of the error as well, because that was, he treated it as a post-occurrence remedial effort. The post-occurrence remediation was not by the anesthesiology, but by the group. That's two guys that testified about it. Then my doctor testified. I think my doctor said it was 300. Well, did Dr. Siegel, did he give a specific number? I don't remember exactly, Steve. I thought he said 300, but I'm not sure. But my point simply is, it doesn't make any difference. At the time Majid testifies, it's 250. That is a judicially binding admission of fact on the corporation. And that's the end of it. You can't guess or speculate anymore after he says 250 is the penalty. It's not, there's a, I know admissions are difficult, and they're tricky, and whether you have an admission about an opinion or whatever, I know all that. This wasn't an admission about an opinion. This was an admission about here's what we do, here's what the policy was there. He says 250. And that... The new policy. No, no, no, no, no, no, no. Before this happened, I asked him at the time, Dr. Majid, so I have to pay 390 of his, of that portion of his transcript. What was the standard at the time? He said we don't, we don't do surgery if the blood sugar is over 250. And that, that's the end of it as far as the standard of care is concerned. If you don't think so, you've got a question. The, the, the jumping ahead. Yeah. But you wanted to have the other owner of this, you said the missing witness issue. Yeah. I assume you were going, you wanted to ask the same type of question. Wouldn't that be It would be cumulative, and I... I mean, I mean, his... None of the people testified that 398 was appropriate. They either said 250 or you said possibly 300. So was it, was it prejudicial error not to bring that doctor in as far as the standard? You know, my position is that it is, and you said it's cumulative, the answer is yes to You can see how hard it is to, to get, to get a verdict. And when you start taking away evidence that obviously the jury found important, it makes a huge, huge difference. So you're basically putting it in the context of cumulative error and not specific prejudicial error. Yes. Okay. But there's, there's more there. I think that one of the significant errors is about the defendant is an anesthesiologist, therefore a pulmonologist can't testify as to the standard. They don't understand it, and I obviously wasn't, wasn't qualified, wasn't capable of explaining it to him. It's not the quality, it's not the specialty of the doctor, it's exactly what he's doing. And, and Dr. Shirav Dave, spelled Dave, testified about the standard of care for clearing somebody for surgery, which he said, I'm also an internist, I'm through all the steps that you go through, what are the problems that can happen, why do you, why do you worry about elevated blood sugar? He gives all of those opinions, and yet the judge won't then let him offer an opinion as to what, to whether the standard of care was violated. And that hurts the case. When you've got a treating doctor there and the judge says, no, he can't give those opinions, it, it, it, it obviously hurt, it hurt this case. He should have been allowed to give it. He was, he was absolutely overwhelmingly qualified on the ability to clear a patient for surgery. And, and the question of anesthesia, but whether the patient should have had surgery at all and being given anesthesia at all. And when the court said that Dr. Dave couldn't testify about that, that obviously had a significant adverse effect on the case. The other, the, the, and that really is my argument. The, Dr. Dave should have been allowed to have given an opinion, and that's before Harris deleted that. Dr., Dr. Majid's admission on behalf of the corporation was binding on the corporation, binding on the corporation's employee, Dr. Michaelson, established the standard of care and established the breach of that standard. There shouldn't have been testimony after that was offered. Dr. Barr's testimony was admissible on the standard of care because it was not, it was not remedial by the defendant himself or by a different, different department. Could I ask you a question on that? Yes. Was, was, was Dr. Barr's evidence deposition read to the jury? Yes. And so that evidence of the jury then did, did hear about the remedial measures that were taken? No. No, no, no. No? No, no. That portion was? His deposition was read, but that portion was stripped. Pardon me? His deposition testimony was read to the jury, but that portion of it was stripped. Was stripped. Okay. The jury did not get to hear that. Okay. And then finally, Dr. Michaelson's admission, Dr. Michaelson, the defendant's doctor, says that, but for the surgery, the complications would not have occurred. You, you got negatives, you got, you got sanitary, you got pre-test, you got damages, all admitted, that should be the end of the case. It wasn't. If you look at the manifest way that the evidence compels that, that there should have been a verdict for the, for the plaintiff. Let me ask a question about the cross-examination of the defendant about his drug treatment. Yes. Okay. And I guess there was a motion in limine barring that. Yes. And you argued that the door had been opened about, because he talked about how he had recertified because he wanted to be in, you know, show his qualifications or whatever. But my question is, I mean, does the record reflect whether he was required to recertify due to the drug problems? He was not. He was not. Okay. So he wasn't required. He was not required. Okay. And that, that came in. Most of it was granted. I didn't violate it. He, he volunteered all that. Okay. Dr. Dalvati should have been allowed to testify as to standard of care. The judge was wrong in that. They, they, it's a knee-jerk reaction. You're, you're a pediatrician. You can't testify about, about general surgery. It's not, that's not the issue. The issue is what, is what the medicine is, that the admissions were binding. And once, you know, the law is pretty clear that if a judicially binding admission is in fact judicially binding and the requirements are that there be clear cuts, something about which the person has knowledge, all those requirements were clear here and all were clearly met and clearly ignored. Thank you. Good morning. Good morning, Your Honor. If it pleases the Court and Counsel, my name is Karen Kendall and with me at the Council table is Trilateral College and together we represent Dr. Michelson and Brigham Anesthesia before this Court. Plaintiff has, Plaintiff has said to this Court that there's a high concern about numbers, about the number that there was at the time of surgery in terms of elevated blood sugar. And that appears in and out with all these issues. I think we need to look at this case by putting a number in perspective. What happened to the Plaintiff was that she developed ARMS, which is a pulmonary distress syndrome. Plaintiff has an expert who testified at trial, Dr. Siegel, he's an anesthesiologist. Dr. Michelson had an expert, Dr. Tooman, also an anesthesiologist who testified at trial. It's interesting when you read their testimony because what you find is that they agreed on one fundamental thing. What they agreed upon is that the elevated blood sugar had nothing to do with the development of ARMS. It doesn't matter if her blood sugar was 398. It doesn't matter if it was under 250. They agreed that it had nothing to do with what happened following the surgery. But does that, what difference does it make? What difference does it make? Right. In other words, if the Plaintiff's claim is that something happened during surgery and she was contraindicated for surgery for whatever reason, was it necessary for the Plaintiff to prove that the elevated blood pressure caused the ultimate problem? Yes. It is necessary for the Plaintiff to show that there was something that Dr. Michelson did or failed to do that proximately caused the injury to the plaintiff. The injury to the plaintiff in this case is the development of dysrespiratory distress syndrome. And, let me stop you there, did any expert testify that the fact of having gone through surgery caused that in some way? No. No one testified to that? No one said that. Plaintiff attempts to create, and the reason Plaintiff attempts to do this, create an admission on the part of Dr. Michelson, is because of this very testimony I'm talking about here. That Dr. Siegel and Dr. Tooman said, no, her elevated blood sugar didn't have anything to do with what happened to her. Moreover, she didn't have any signs of anything. Even Dr. Dave said he didn't know what caused her ARDS. No one knew that. So no expert testified to the cause of what caused the ultimate problem that she had? No expert testified to that. The reason, as I started to say, the reason the Plaintiff tried to create this admission on the part of Dr. Michelson was exactly what I'm saying, is that there is no evidence of proximate cause in this record. And what Dr. Michelson said could never be construed as an admission. As we said in our brief, it's just like saying, I wouldn't be here today if I hadn't been born. There was a general statement, not anything specific which would meet the standard of a judicial admission. The Plaintiff also is contending that there was error in failing to allow Dr. Dave to testify regarding the standard of care. There are three reasons why the trial court's ruling was not an abuse of discretion. And by the way, as we pointed out in our brief, what the Plaintiff is attempting to show here and has the burden of showing is, number one, that the trial court abused its discretion in ruling on these evidentiary matters, and two, even if that's the case, that that somehow affected the outcome of trial. Now Dr. Dave was a pulmonologist. He testified that when he looks at a patient prior to surgery, it's at the request of an internist. The internist said, look, this patient is having some kind of respiratory problem. I want you to check it out first. That does not convert him into an anesthesiologist. Everyone, including Dr. Barr, said it's the anesthesiologist who makes the call determining whether someone can go into surgery. And as Dr. Tooman said, we look at the big picture. Of course you look at the elevated blood sugar, but you have to look at whether there are any physiological problems arising from the elevated blood sugar, which would be contraindications for surgery. Even Dr. Dave was asked whether these events would not have happened but for the surgery and the general anesthesia. He said, I can't say that. He said, I can't say that. The other thing he said, he was asked specifically because the plaintiff was trying to make a foundation for his opinion testimony on the standard of care. He was asked specifically whether there's any difference in the standard of care for a pulmonologist, a family practitioner, or any other doctor in clearing someone for surgery. He didn't answer that question. His answer was nonresponsive. There is no basis in this record to find that the trial court erred in finding that a sufficient foundation had not been laid to allow him to testify as to standard of care. Moreover, as we pointed out, it would have only been cumulative. There was plenty of standard of care testimony in the record put on by a number of witnesses, anesthesiologists. The plaintiff also contends that Dr. Machig, who is not a defendant in this action, who is simply another employee like Dr. Michelson, made some kind of judicial admission. While respectfully, Dr. Machig is entitled to his opinion, but he cannot preempt Dr. Michelson and his defense. He cannot make a judicial admission on behalf of Dr. Michelson or preclude that testimony. I think it's important for this court to look at the picture as a whole, recognize that the jury is against the manifest weight of the evidence. What plaintiff is trying to do is zoom past the requirement of proof to say, we can short circuit that because we have Dr. Michelson and Machig. We can claim those are judicial admissions. Therefore, we take this out of the burden of proof requirement. Before we do that, let's look at what the jury heard plaintiff's expert, the anesthesiologist, Dr. Michelson, tell the jury. He said, there's no causal connection between elevated blood sugar, which is what plaintiff charged Dr. Michelson because she had elevated blood sugar, and the plaintiff's pulmonary problems. Dr. Siegel had no opinion as to what caused the problem in her lungs. He was specifically asked, but for the surgery, would these problems have happened? He said, I can't say. It's a rare event. I don't know the cause. I can't say it one way or the other. He had no criticism of the evaluation of the lungs and respiratory system that Dr. Michelson did prior to surgery. Her lungs were clear. He said this was a bizarre sequence of events where it went from normal lungs to significant lung disease in a period of a few hours. To a reasonable degree of pulmonary problems. That's what plaintiff's expert told the jury. The jury heard the testimony of all these witnesses. The jury heard ample testimony both on the standard of care and as to proximate cause. The trial court ruled correctly on these evidentiary issues and certainly did not abuse its discretion in refusing to admit certain evidence. The subsequent remedial measure that the plaintiff has taken several different takes on was in the record, in Dr. Barr's testimony, and in Dr. Masheed's testimony, something that occurred by the But even if that evidence had been included, it would only be cumulative because other people talked about numbers and their significance already. There isn't any basis to overturn the jury's verdict in the incident case. The case was fairly tried. The jury heard the Thank you, Counselor. Thank you. What Dr. Siegel said is accurate, but it's misleading. Dr. Siegel testified as to the standard of care, not as to causation. Dr. Daveh testified as to causation. What did He starts out by talking about what happens when you do surgery, and he says that there has to be, first of all, intubation. And intubation can cause ARDS. It would not have been intubation but for the surgical procedure. He says that when anesthesia is given, you paralyze the patient, and sometimes you have to breathe for them. He said that's what happened in this case. They had to intubate her, had to breathe for her, and later she had to be ventilated. All of those things contributed to cause ARDS. And does he say that personally? It was never your theory, as I understand it, that the high blood pressure caused the ARDS. High blood sugar. Or high blood sugar, I'm sorry. I mean, I said that throughout the trial. But the point was the fact that she went through surgery, things that happened during surgery, that was your theory, right? That's it in a nutshell. Nobody can say, well, first of all, nobody, if anybody says what caused the ARDS, they win the Nobel, because nobody knows what caused it. But they know there are things that correlate with it. And one of the questions I asked Dr. DuVey was, was she at risk for ARDS? Was she at risk to lose her life, at risk for health, anything like that at all, but for the surgery? Answer, no. And then, okay, so we had the surgery. We put her, we anesthetized her, intubated her. Intubation can cause respiratory problems. Respiratory problems can cause ARDS. He went down the list. It's a house of jacks list, but it's there. It's contributed to cause, and the answer is very clear, that but for the surgery, more likely than not, and it has been more likely than not, and nobody contradicted that, the ARDS wouldn't occur. The defense position was, well, the high blood sugar doesn't cause ARDS, and that may or may not be true, because nobody knows what causes ARDS. You're an expert on ARDS. We tried this for a week in Jackson, yeah. It, nobody knows what caused it, but we do know, we do know that things correlate with it, and we do know that it doesn't happen walking down the street. It happens when you mess with the lungs. Intubation can cause it. Ventilation can cause it. Taking off insulation can cause it. You can get an infection, an occult infection, as Dr. LaVey talked about, by doing all this, and that's in his testimony. It's completely there. Based on your positions, all the potential causes relate directly to the surgery. Absolutely. You don't get it walking down the street. You get it when there's some kind of respiratory problem that occurs, and it's a strange illness. It can be devastating. Illness can cause you death. She got great care, or she wouldn't have survived, and the reason she got great care is because LaVey recognized it and treated it, but it's all connected. None of that would have happened, and nobody says anything differently. It would not have happened at all but for that, but for the surgery, which never should have occurred. Getting back to the admission, the counselor says that Dr. Majid can't make an admission on behalf of Dr. Michaelson, and yeah, he can. He didn't. He testified, this is in his transcript. At the time, all this happened, you are known for brigham anesthesia south. Answer, yes. You were providing anesthesia services at southern orthopedics at, yes, and that's a surgery center, yeah, and then on the next page, as of that time, was uncontrolled blood sugar a concern? Answer, yes. Usually, it definitely, I mean, we don't do elective surgery when the blood sugar is higher than normally expected. Question, what figure are you talking about? Answer, approximately less than 250 is our cutoff point at that time approximately, I think. That's his testimony. That's binding on the, everybody forgot that the corporation's offended the case. Mike, Rick's not here today. He was invisible at the trial of the case, but the corporation's still offended, and the admissions by an owner of the corporation are binding on the corporation. He says that's the standard, and you've got his testimony about it as well. It is binding on the corporation. We're entitled to a personal remand. Thank you. Thank you, counsels, for your argument and brief today. We'll take that as an advisement and get back to you.